IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| R. ALEXANDER ACOSTA,<br>SECRETARY OF LABOR, UNITED<br>STATES DEPARTMENT OF LABOR,<br><br>Plaintiff,<br><br>vs.<br><br>JANI-KING OF OKLAHOMA, INC.,<br><br>Defendant. | No. CIV-16-1133-W |

## ORDER

With leave of court, plaintiff R. Alexander Acosta, Secretary of Labor, United States Department of Labor[1] ("Secretary"), filed an amended complaint on April 20, 2017, see Doc. 23, and the matter now comes before the Court on the Motion to Dismiss filed by defendant Jani-King of Oklahoma, Inc. ("Jani-King"), pursuant to Rules 12(b)(6) and 12(b)(7), F.R.Civ.P. The Secretary has responded, and Jani-King has filed a reply in support of its challenges to the factual sufficiency of the allegations in the amended pleading and its contention that the Secretary has failed to join all required parties.

In determining whether Jani-King's arguments under Rule 12(b)(6), supra, have merit, the Court is guided by the decision of the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). In Twombly, the Supreme Court held in accordance with Rule 8, F.R.Civ.P., that a complaint need not contain "heightened fact

---

[1]On April 28, 2017, R. Alexander Acosta was sworn in as Secretary of Labor. Pursuant to Rule 25(d), F.R.Civ.P., Acosta is therefore substituted as plaintiff in this action for Thomas E. Perez, and the Court DIRECTS the Clerk of the Court to change her records to reflect this substitution.

pleading of specifics," 550 U.S. at 570, or "detailed factual allegations," id. at 555 (citations omitted), but it must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

The United States Court of Appeals for the Tenth Circuit has stated that Twombly imposes a "burden . . . on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he . . . is entitled to relief." Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Twombly, 550 U.S. at 556). The allegations in the amended complaint must therefore "be enough that, if assumed to be true, . . . [the Secretary] plausibly (not just speculatively) has a claim for relief [against Jani-King]." Id. (footnote omitted).

The Court's task at this stage is to determine whether "there are well-pleaded factual allegations," Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), in the challenged pleading; if so, the "[C]ourt should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.[2] "A claim has facial plausibility when the

---

[2]"'The [C]ourt's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" Swoboda v. Dubach, 992 F.2d 286, 290 (10th Cir. 1993)(quotation omitted)(emphasis deleted). That is to say, "the sufficiency of a complaint must rest on its contents alone." Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010) (citation omitted).

Exceptions to this rule, however, do exist. When a complaint incorporates documents by reference, e.g., id. (citations omitted), when submitted documents referred to in that paper are central to a plaintiff's claim and the authenticity of those documents is not in dispute, e.g., id. (citation omitted), and when matters exist of which a court should take judicial notice, e.g., id. (citation omitted), the Court in those limited instances is not required to restrict itself to examination of the pleading's allegations.

The Court has carefully considered the Secretary's amended complaint and the references therein to Jani-King's "franchises arrangements[,]" Doc. 23 at 2, ¶ 4, which reflect the alleged "unilateral constraints," id. at 5, ¶ 17, on which the Secretary has relied, and to Jani-King's "invest[ment] in and develop[ment of] an infrastructure[,]" id. ¶ 18, that "enabl[es] it to obtain, maintain, and control the essential functions of its janitorial business." Id. After doing so, the Court finds the Secretary's allegations regarding the manner in which Jani-King operates and its

2

plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citations omitted). As the Tenth Circuit has recognized, Twombly and Iqbal do not change Rule 8's notice requirement and Rule 12(b)(6)'s requirement that a complaint state a legally recognized claim for relief; these decisions only add the "requirement of plausibility [that] serves . . . to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success[.]" Robbins, 519 F.3d at 1248.[3]

---

relationship with its "Janitorial Cleaners"—a term used by the Secretary in his amended complaint—are taken, in part, from a Jani-King franchise agreement, a copy of which has been submitted by Jani-King. Compare Doc. 23 at 5, ¶ 16 (Jani-King retains "sole discretion over all financial aspects of . . . cleaning contracts such as pricing, billing and invoicing") with Doc. 24-1 at 11, § 4.8 ("Franchisee agrees that . . . [Jani-King] shall have the exclusive right to perform all billing and accounting functions for the services provided by Franchisee"); id. at 12, § 4.8.1 (Jani-King "each month will invoice customers serviced by Franchisee"); Doc. 23 at 4, ¶ 13 (Janitorial Cleaners "are required to pay [Jani-King] . . . franchise fees, finder's fees, continuing royalties, and other payments") with Doc. 24-1 at 12, § 4.8.1 (Jani-King will provide accounting of Janitorial Cleaners' business "after deduction of all appropriate fees and charges including, but not limited to, all royalty fees, Accounting Fees, any note payments, Finder's Fees, advertising fees, transfer fees, [and] Technology Fees"); Doc. 23 at 5, ¶ 16 (Jani-King "requires that franchisees report to [its] . . . office once per month to obtain payment for their work, which . . . [Jani-King] disburses") with Doc. 24-1 at 12, § 4.8.1 ("[o]n the fifth day of each month, . . . [Jani-King] will disburse to Franchisee the amount of money appearing in the 'Due Franchisee Column' of the Franchisee Report for the preceding month"); Doc. 23 at 5-6, ¶ 18 (Janitorial Cleaners "bear the burden of buying the tools and equipment allowing them to perform cleaning functions") with Doc. 24-1 at 15, § 4.19 ("Franchisee agrees to provide all labor, materials, tools and supplies necessary to provide the [cleaning and/or maintenance] service[s]").

The Secretary has urged the Court to disregard this document as well as the Declaration of Jill Hill, see Doc. 24-1 at 1-2, submitted by Jani-King, because, in the Secretary's opinion, the amended complaint "does not reference a franchise agreement[,]" Doc. 25 at 5, only "franchise arrangements." Doc. 23 at 2, ¶ 4. While the Court agrees that Hill's Declaration should not be considered, it finds that the franchise agreement is central to the Secretary's claim since the Secretary has relied in part on and/or referred to the document's terms. Accordingly, the Court is permitted to consider, and has examined, the same.

[3]As the Tenth Circuit has stated, "'[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.'" Robbins, 519 F.3d at 1248 (quoting Twombly, 550 U.S. at 555 n.3)(further citation omitted).

This "requirement of plausibility" thus obligates the Secretary to set forth in his amended complaint "'either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" Bryson v. Gonzales, 534 F.3d 1282, 1286 (10th Cir. 2008)(quotation and further citation omitted). And, while "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context[,]" Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1215 (10th Cir. 2011)(citations omitted), neither "'naked assertion[s]' devoid of 'further factual enhancement[,]'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), nor "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory allegations, . . . suffice." Id. (citation omitted).

"[T]he Twombly/Iqbal standard recognizes a plaintiff should have at least some relevant information to make the claims plausible on their face." Khalik v. United Air Lines, 671 F.3d 1188, 1193 (10th Cir. 2012). The Federal Rules of Civil Procedure "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation[,]" Iqbal, 556 U.S. at 678 (citations omitted), and more than "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' . . . ." Kansas Penn Gaming, 656 F.3d at 1214 (quoting Twombly, 550 U.S. at 555). If the plaintiff's factual allegations "are 'merely consistent with' [the] . . . defendant's liability," Iqbal, 556 U.S. at 678 (quotation omitted), or "do not permit the [C]ourt to infer more than the mere possibility of misconduct," id. at 679, the plaintiff "has not 'show[n]' . . . 'that [he] . . . is entitled to relief.'" Id. (quotation omitted).

Jani-King, as alleged, "advertises on its website that it has 'provid[ed] janitorial services to customers in the Oklahoma City area since 1969' and satisfies the commercial

4

cleaning needs of customers throughout the Oklahoma City area." Doc. 23 at 1, ¶ 2. It "procures workers to perform the[se] janitorial cleaning services . . . by selling franchises directly to individuals or sometimes indirectly to individuals through corporate entities owned by one or sometimes two individuals . . . who personally perform the janitorial cleaning work as designated by . . . [Jani-King]." Id. at 1-2, ¶ 3 (footnote omitted).

According to the Secretary, Jani-King "improperly classifies [these workers—identified in the amended complaint as "Janitorial Cleaners," id. at 2, ¶ 3—who are procured] through the[ ] franchise arrangements as independent contractors rather than as employees," id. at 2, ¶ 4, and because they are in fact "employees" entitled to the protections afforded by the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201 et seq., Jani-King there must comply with FLSA's recordkeeping requirements regarding their employment. See Doc. 23 at 2, ¶ 4 (citing 29 U.S.C. § 211(c); 29 C.F.R. Part 516).

The Secretary has contended in particular

(1) that Jani-King "has sold franchises primarily to individuals (i.e., sole proprietors), and sometimes to two individuals (e.g., husband and wife, parent and sibling) in their individual capacities, and more recently, as required by . . . [Jani-King], to corporate entities typically formed by one or sometimes two individuals for the purpose of purchasing a franchise[,]" id. at 3-4, ¶ 12;

(2) that "individuals owning franchises in their individual capacities in recent years have transferred current and/or expired franchises to newly formed corporate entities as required by [Jani-King] . . . without any material change in the[ir] . . . performance of janitorial cleaning work . . . [,]" id. at 4, ¶ 12;

5

(3) that Jani-King requires these "individuals [to] form[ ] new corporate entities . . . to continue performing janitorial work for [Jani-King] . . . [,]" id.;

(4) that "[t]he Janitorial Cleaners are in fact laborers who are required to pay . . . [Jani-King] franchise fees, finder's fees, continuing royalties, and other payments in order to work jobs such as cleaning carpets and hard floors, disposing of trash, washing windows, and other cleaning services provided to [Jani-King's] . . . clients in the Oklahoma City area[,]" id. ¶ 13;

(5) that "[a]s a matter of economic reality," id. ¶ 14, these Janitorial Cleaners, who "[i]n most instances, . . . rely exclusively on [Jani-King] . . . for business and [who] are not . . . in business for themselves[,]" id., "are economically dependent on [Jani-King] . . . , [which] . . . permits them to . . . provid[e] cleaning services—a function integral to . . . [Jani-King's] business—[through] . . . cleaning contracts that . . . [Jani-King] negotiates, maintains, and controls[,]" id.;

(6) that Jani-King "controls and owns all . . . the cleaning contracts that the Janitorial Cleaners service[, and] . . . can reassign those contracts from one Janitorial Cleaner to another as [it] . . . chooses[,]" id. ¶ 15;

(7) that even "[i]n th[ose] rare instance[s] when a Janitorial Cleaner obtains a customer lead," id., Jani-King, which "has sole discretion on all aspects of the cleaning contract[,]" id., "must approve [the] terms [of] and prepares and executes the contract[,]" id.; and

(8) that Jani-King "can (and does) take such contracts away from Janitorial Cleaners and reassigns them to other Janitorial Cleaners." Id.

The Secretary has further alleged in support of its claim for relief

(1) that Jani-King "retains the exclusive right to perform all administrative functions relative to customers served by the Janitorial Cleaners, including sole discretion over all financial aspects of the cleaning contracts such as pricing, billing and invoicing[,]" id. at 5, ¶ 16;

(2) that Jani-King in particular "handles all aspects of how and whether [the Janitorial Cleaners] . . . are paid for the work they perform[,]" id.: "[p]ayment for janitorial work is made directly by customers to [Jani-King] . . . rather than to the Janitorial Cleaners[,]" id., and Janitorial Cleaners must "report to [Jani-King's] . . . office once per month to obtain payment for their work . . . [,]" id.;

(3) that "[i]n most cases, the Janitorial Cleaners are not using business skill, judgment, or initiative with respect to the work they perform; nor do they exercise managerial skill in running their 'business[,]'" id. ¶ 17;

(4) that Jani-King instead "controls the procurement, flow, and assignments of cleaning jobs . . . [and the] Janitorial Cleaners perform cleaning services in accordance with . . . [Jani-King's] required cleaning policies and the pricing terms and schedules included in . . . [Jani-King's] contracts[,]" id.;

(5) that "[t]he work performed [by the Janitorial Cleaners] is subject to [Jani-King's] review and approval . . . to ensure compliance with [its] . . . contracts, standards, and policies[,]" id.; and

(6) that Jani-King "also handles ongoing customer service matters and all aspects of marketing and advertising with very few exceptions." Id.

According to the Secretary,

(1) "[t]he relative investments of the Janitorial Cleaners, if any, are minimal compared to those of [Jani-King, which] . . . has invested in and developed an infrastructure enabling it to obtain, maintain, and control the essential functions of its janitorial business[,]" id. ¶ 18;

(2) "[i]n contrast, the Janitorial Cleaners' investment is more limited[:] they bear [only] the burden of buying the tools and equipment [that] allow[ ] them to . . . clean[ ] . . . ." Id. at 5-6, ¶ 18.

The Court is mindful that while Rule 12(b)(6), supra, "does not require that [the] [p]laintiff establish a prima facie case in h[is] . . . [pleading]," Khalik, 671 F.3d at 1192, an examination of the essential "elements of [the] . . . alleged cause of action [is] help[ful] to determine whether [the] [p]laintiff has set forth a plausible claim." Id. (citations omitted). Accordingly, the Court has considered what elements the Secretary must ultimately establish to prevail on his FLSA claim and then "'draw[ing] on its judicial experience and common sense[,]'" Burnett v. Mortgage Electronic Registration Systems, Inc., 706 F.3d 1231, 1236 (10th Cir. 2013)(quoting Iqbal, 556 U.S. at 679), the Court has "compar[ed] the [challenged] pleading with the elements of the cause[ ] of action." Id. (citation omitted); e.g., id. (Iqbal's contextual approach means comparing pleading with elements of cause of action); id. (pleadings that do not allow for at least "reasonable inference" of legally relevant facts are insufficient).[4]

---

[4]While a response brief may be used to clarify the allegations in a complaint, e.g., Pegram v. Herdrich, 530 U.S. 211, 230 n.10 (2000), it is not the proper vehicle to supplement a pleading's allegations to overcome a motion to dismiss. Accordingly, the Court has disregarded certain statements in the Secretary's response. See, e.g., Doc. 25 at 3 ("Defendant fails to explain that historically it has contracted directly with individuals for terms of 20-, or more recently, 10-year

8

The FLSA provides that

> [e]very employer . . . shall make, keep, and preserve such records of the persons employed by [it] . . . and of the wages, hours, and other conditions and practices of employment maintained by [it] . . . , and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator [of the Wage and Hour Division of the United States Department of Labor] as he shall prescribe by regulation[5] or order as necessary or appropriate . . . .

29 U.S.C. § 211(c).

The FLSA deems "it . . . unlawful for any person[,]" id. § 215(a)(5),

> to violate any of the provisions of section 211(c) . . . , or . . . to make any statement, report, or record filed or kept pursuant to the provisions of such section or of any regulation or order thereunder, knowing such statement, report, or record to be false in a material respect.

Id. § 215(a)(5).

The Secretary has asserted that "the working relationship between . . . [Jani-King] and the Janitorial Cleaners . . . demonstrates that these individuals are . . . [Jani-King's] employees because they are economically dependent on [Jani-King] . . . [,]" Doc. 23 at 6, ¶ 19, and by wrongfully classifying these Janitorial Cleaners as independent contractors and not employees, Jani-King has violated these two statutes because

---

terms using a similar "franchise agreement" form that did not require a corporate entity."); id. at 9 ("The vast majority [of franchises], however, are owned by a single individual who signed the franchise agreement in her or his individual capacity or two individuals who entered into and signed the franchise agreement in their individual capacities (not as a registered partnership). The rest are owned by entities which in turn are mostly owned by single individuals and some by two individuals, and such individuals perform the janitorial cleaning work for Defendant.").

[5]The related regulation, 29 C.F.R. § 516.2, requires employers to maintain and preserve specific payroll and other records related to their employees, including, but not limited to, the employee's date of birth, if under 19, e.g., id. § 516.2(a)(3), and the employee's sex (which may be indicated by way of the prefixes Mr., Mrs., Miss[ ], or Ms). E.g., id. § 516.2(a)(4).

> it failed to make, keep, and preserve adequate and accurate records of employees and the wages, hours and other conditions and practices of employment . . . [,]

id. at 6, ¶ 20,

> failed to maintain and preserve payroll or other records regarding each employee containing the name, address, date of birth, and sex and occupation in which each employee is employed[,]

id. ¶ 21, and further

> failed to maintain a weekly record of hours worked, including any hours worked in excess of 40 hours in a workweek.

Id. ¶ 22.

As relief, the Secretary has prayed in the amended complaint for a permanent injunction to restrain Jani-King's violations of sections 211(c) and 215(a)(5), e.g., Doc. 23 at 7, ¶ I (citing 29 U.S.C. § 217), and to "requir[e] . . . [Jani-King] to make, keep, and preserve . . . records of the individuals [it] . . . employ[s] . . . and of the wages, hours, and other conditions and practices of employment [it] maintain[s] . . . ." Id. ¶ 23.

In support of its request for dismissal, Jani-King has argued that the Secretary has failed to allege sufficient facts to plausibly suggest that each Janitorial Cleaner qualifies as an "employee" entitled to FLSA protection. In this connection, section 203 defines the term "employer" to

> include[ ] any person acting directly or indirectly in the interest of an employer in relation to an employee . . . .

29 U.S.C. § 203(d). The term "person" is statutorily defined to

> mean[ ] an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons.

Id. § 203(a). The FLSA defines the term "employee" to "mean[ ] any individual employed by an employer." Id. § 203(e)(1).

Jani-King has argued that because section 203(e)(1) refers to "employees" as "individuals," business entities cannot be employees. That is to say, according to Jani-King, "a corporate entity can never be an 'individual,' which is a statutory prerequisite to status as an 'employee.'" Doc. 24 at 6. Based on the plain words of the statute, the Court agrees.[6] The statutory definition of "person" includes all types of legal entities, both individuals (i.e., natural persons) and artificial entities (e.g., partnership, association, corporation). See 29 U.S.C. § 203(a). By contrast, the definition of "employee" names but one type of legal entity: individuals. See id. § 203(e)(1).[7]

Jani-King may only be held liable for its failure, if any, to "make, keep, and preserve . . . records of," 29 U.S.C. § 211(c), its employees—those individuals it employs, e.g., id. § 203(e)(1),[8] and while the Secretary has asserted in his amended complaint that he "brings this action seeking proper recordkeeping of hours and pay . . . for individuals[,]" Doc. 23 at 3, ¶ 11, "employ[ed] as [J]anitorial [C]leaners[,]" id., he does not distinguish between those Janitorial Cleaners procured to perform cleaning services who are artificial

---

[6]See Johns v. Stewart, 57 F.3d 1554, 1557 (10th Cir. 1995)(determining "employee" status for purposes of FLSA presents question of statutory interpretation and courts begin with plain language of section 203(e)(1)). Cf. Mohamad v. Palestinian Authority, 132 S. Ct. 1702, 1706 (2012)(because the relevant statute does not define the term "individual" courts must look to the word's ordinary meaning)(citation omitted); id. at 1707 ("As a noun, 'individual' ordinarily means '[a] human being, a person.'")(quotation and further citation omitted).

[7]"This is not to say that the word 'individual' invariably means 'natural person' when used in a statute. Congress remains free, as always, to give the word a broader or different meaning. But before [a court] . . . will assume it has done so, there must be some indication Congress intended such a result." Id.; e.g., id. at 1708 ("person" often has broader meaning in the law than "individual" and frequently includes nonnatural persons).

[8]See Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 592 (1944) (when addressing FLSA claims, courts must "recogniz[e] that . . . [they] are dealing with human beings and with a statute that is intended to secure to them the fruits of their toil and exertion").

11

entities and those Janitorial Cleaners who are individuals. The Secretary has instead in conclusory fashion lumped together all Janitorial Cleaners procured by Jani-King through its franchise agreements.[9] See Doc. 23 at 1-2, ¶ 3.

Rule 12(b)(6), supra, requires the Court first to differentiate between a pleading's factual allegations—which must be accepted as true—from its conclusory and general averments—which need not be credited, and then, to decide whether those factual allegations, taken as true, are sufficient to "allow[ ] the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). Because the factual allegations in the amended complaint do not plausibly suggest that the FLSA applies to, and protects, all Janitorial Cleaners as that term is used in this case, the Secretary "'ha[s] not nudged . . . [his] claim[ ] across the line from conceivable to plausible.'"[10] Robbins, 519 F.3d at 1247 (quoting Twombly, 550 U.S. at 570).[11]

---

[9]In this connection, the Secretary has alleged that because Jani-King sells its franchises to individuals, either directly or through corporate entities owned by these individuals, see Doc. 23 at 1, ¶ 3; id. at 3-4, ¶ 4, the individuals should be considered Jani-King's "employees." Such contention ignores corporate forms, and the amended complaint contains no well-pleaded factual allegations that permit the Court to do so.

[10]That the term "employee" has been interpreted expansively in accordance with the FLSA's remedial purpose does not mean the Court can ignore the plain language of the statute. E.g., Tony and Susan Alamo Foundation v. Secretary of Labor, 471 U.S. 290, 295 (1985)(citing United States v. Rosenwasser, 323 U.S. 360, 363 n.3 (1945)); Johns, 57 F.3d at 1557 (courts have interpreted definition of "employee" broadly to effectuate broad remedial purposes of FLSA).

[11]In addition to their debate over the plain language of the statute, the parties have asked the Court to address the "economic realities" test, a multi-factor test that turns on the "economic realities" of the relationship between a worker and a business to determine if that worker is an employee for purposes of the FLSA. E.g., Henderson v. Inter-Chem Coal Co., 41 F.3d 567, 570 (10th Cir. 1994)(court's inquiry not limited by any contractual terminology or by traditional common law concepts of "employee" or "independent contractor").

Because the amended complaint's lack of plausible allegations that show which of Jani-King's Janitorial Cleaners are individuals and thus, entitled to FLSA protection is dispositive, the

Accordingly, the Court[12]

(1) GRANTS Jani-King's Motion to Dismiss [Doc. 24] filed on April 24, 2017; and

(2) because the Secretary has had sufficient opportunity to amend his pleading, DISMISSES this matter with prejudice.

ENTERED this __9th__ day of June, 2017.

LEE R. WEST
UNITED STATES DISTRICT JUDGE

---

Court has not considered the parties' arguments regarding this test since it is used to determine whether an individual qualifies as an "employee" entitled to FLSA protection. E.g., id. at 570 (focal point of court's inquiry is whether individual is economically dependent on the business to which he or she renders service or is, as a matter of economic fact, in business for him or herself).

[12]Because the Court has determined that dismissal is warranted under Rule 12(b)(6), supra, the Court has not addressed Jani-King's arguments under Rule 12(b)(7), supra.