## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EUGENE SCALIA, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>     PLAINTIFF,<br>v.<br><br>JANI-KING OF OKLAHOMA, INC., a foreign corporation,<br><br>     DEFENDANT. | Civil Action No.  5:16-cv-01133-G |

## MOTION TO EXCLUDE REPORTS AND TESTIMONY OF
## DEFENDANT'S DESIGNATED EXPERT AND BRIEF IN SUPPORT

The Secretary of Labor, United States Department of Labor (the "Secretary"), moves the Court to exclude the reports, opinions, and testimony of Michael H. Seid, Jani-King of Oklahoma, Inc.'s ("JKO") designated expert (Doc. No. 75). The Secretary submits the following brief in support of his motion.

# TABLE OF CONTENTS

**INTRODUCTION** ........................................................................................................ 1

**ARGUMENT** ............................................................................................................... 3

    **A.  Standards for Admissibility of Expert Testimony** ............................................ 3

    **B.  Mr. Seid's Testimony is Not Admissible Because it is Not Relevant to the Issue of Whether Individual Franchise Owners are Employees or Independent Contractors under the FLSA** ..................................................................................... 4

    **C.  Mr. Seid's Opinions Are Unreliable Because They are Not Premised Upon Specialized Knowledge or the Application of Technical Analysis. Rather, His Opinions Are the Product of Personal Beliefs and Speculation** ........................... 11

    **D.  Mr. Seid Improperly Provides Legal Opinions That Invade the Province of the Court** ............................................................................................................... 17

**CONCLUSION** ........................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir. 2009) ........................................ 4

Acosta v. Jani-King of Oklahoma, Inc., 905 F.3d 1156, 1160 (10th Cir. 2018) ................. 5

Andrews v. Metro North Commuter R. Co., 882 F.2d 705, 708 (2nd Cir. 1989) .............. 12

Baumann v. American Family Mut. Ins., Co., 836 F. Supp. 1196, 1201 (D. Colo. 2011) . 4

Bitler v. A. O. Smith Corp., 400 F.3d 1227, 1234 (10th Cir. 2005).................................... 3

Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993) ............................................ 3

Dodge v. Cotter Corp., 328 F.3d 1212, 1222 (10th Cir. 2003) ........................................... 4

Doty v. Elias, 733 F.2d 720, 722-23 (10th Cir. 1984).......................................................... 5

Drexel v. Union Prescription Ctrs., Inc., 582 F.2d 781, 786 (3rd Cir. 1978)...................... 7

Gabana Gulf Disribution, Ltd. V. GAP Intern. Sales, Inc., 2008 WL 11123 (N.D. Cal.
    Jan. 9, 2008) ................................................................................................................... 3

Giovanni v. Jani-King of Boston, Inc., et al., Case No. 07-10066-MLW (D. Mass) ..... 2, 3

Goebel v. Denver and Rio Grande Western R. Co., 346 F.3d 987, 991 (10th Cir. 2003).. 11

Goodly v. Check-6 et al., Case No. 16-cv-344, 2018 WL 5091901at *2 (N.D. Okla. Oct.
    18, 2018)........................................................................................................................... 5

Hamstein Cumberland Music Group v. Estate of Williams, No. 06-CV-63-GKF-PJC,
    2008 WL 4525782 at *1 (N.D. Okla. 2008)................................................................... 17

Herr v. Heiman, 75 F.3d 1509, 1513 (10th Cir. 1996)......................................................... 5

Hughes v. Family Life Care, Inc., 117 F. Supp.3d 1365 (N.D. Fla. 2015) ....................... 19

Imars v. Contractors Mfg. Servs., Inc., 165 F.3d 27 (6th Cir. 1998) ................................ 19

Juarez v. Jani-King of California, Inc., et al., Case No. 4:09-cv-03495-YGR (N.D. Cal))
    ........................................................................................................................................ 2, 3

Kumho Tire Co., Ltd v. Carmichael, 526 U.S. 137, 147-48 (1999).................................... 4

Myers v. Jani-King of Philadelphia, Inc., et al., Case No. 2:09-cv-01738-RBS (E.D.
    Penn.)).............................................................................................................................. 2

Otis Elevator Co. v. Midland Red Oak Realty, Inc, 483 F.3d 1095 (10th Cir. 2007)........ 17

U.S. v. Whitted, 11 F.3d 782, 785-86 (8th Cir. 1993)....................................................... 10

Vasquez v. Jan-Pro Franchising Int'l, Inc., 939 F.3d 1045 (9th Cir. 2019) ........................ 3

Wells v. Allergan, Inc., Case No. 12-973-C, 2013 WL 7208221 at *2 (W.D. Okl. Feb. 4,
    2013)................................................................................................................................ 10

Williams v. Jani-King of Philadelphia, Inc., et al., 837 F.3d 314, 324 (3rd Cir. 2016) ....... 7

**Rules**

Federal Rule of Evidence 702 ............................................................................................. 3

## INTRODUCTION

JKO designated as its expert witness Michael H. Seid, the Managing Director of MSA Worldwide, a franchising consulting firm located in West Hartford, Connecticut. JKO's Rule 26 disclosure states that Mr. Seid is expected to testify about generally accepted customs and practices of the franchising industry. (Doc. No. 75). JKO provided the Secretary with a copy of Mr. Seid's expert report and his curriculum vitae, and counsel for the Secretary deposed Mr. Seid on December 18, 2019.[1]

Mr. Seid's report and testimony includes opinions and statements beyond franchising customs and practices.[2] He expounds upon such topics as: (1) the history and purpose of franchising; (2) JKO's business practices and its relationship with its franchisees; (3) why it is necessary for JKO and other franchise systems to have and enforce brand standards and controls; (4) how JKO's brand control measures benefit franchisees; (5) how JKO's low-cost franchise opportunities benefit people of modest means; and (6) why franchisees are independent contractors.

Mr. Seid's opinions concerning general customs and practices and other aspects of franchising are not relevant to whether JKO's individual franchise owners who perform the janitorial cleaning services for JKO's customers are employees under the Fair Labor Standards Act ("FLSA"). His deposition testimony establishes that his opinions, even if

---

[1] **Ex. 1** filed with this motion and brief includes excerpts from the condensed version of Mr. Seid's deposition testimony transcript ("Tr.") and includes relevant exhibits marked at the deposition, including his Curriculum Vitae marked as Seid 1 ("CV") and expert report marked as Seid 2 ("Rpt.").

[2] All of Mr. Seid's opinions that he may offer in this case are included in his report. (Tr. 32:8-33:8).

they were relevant, are not the product of specialized knowledge or technical analysis, but premised upon his subjective beliefs and assumptions. Mr. Seid's testimony is unnecessary and inappropriate because he merely restates information from JKO's franchise documents and franchise owner deposition testimony to advocate for JKO. He also provides legal opinions that he is not qualified to make, are incorrect, and not appropriate expert subject matter.

Mr. Seid's testimony highlights his argumentative advocacy for JKO and its affiliates who regularly pay him to submit declarations, reports, and testimony in support of their defense against employee misclassification lawsuits brought by franchise owners, and now the Department of Labor. Mr. Seid has advanced the same arguments and positions in declarations, reports, and testimony submitted on behalf of Jani-King affiliates in at least three other employee misclassification cases.[3] The Courts in these cases either did not consider his opinion when entering judgment against Jani-King and in favor of

---

[3] The following exhibits include identifying pages from Declarations of Mr. Seid submitted by Jani-King in employee misclassification litigation: **Ex. 2** (three Declarations filed in Giovanni v. Jani-King of Boston, Inc., *et al.*, Case No. 07-10066-MLW (D. Mass) **Ex. 3** (Declaration filed in Myers v. Jani-King of Philadelphia, Inc., et al., Case No. 2:09-cv-01738-RBS (E.D. Penn.)); **Ex. 4** (two Declarations filed in Juarez v. Jani-King of California, Inc., *et al.*, Case No. 4:09-cv-03495-YGR (N.D. Cal)). On page 6 of his CV, Mr. Seid misidentified the defendant in the Giovanni case as a business other than Jani-King, and he did not identify the other two Jani-King cases in his extensive list of cases in which he provided expert testimony included in his Rpt. pp. 47-48 and CV pp. 3 to 11. (Tr. 19:23-21:20). He submitted Declarations in each case, and provided deposition testimony in the Juarez case (fn. 6, Ex. 7).

franchise owners,[4] the case settled,[5] or a decision to exclude his testimony is pending.[6]

Here, like in the other cases, Mr. Seid's opinions and arguments will not aid the factfinder

and are neither relevant nor reliable. The Court should exclude him as an expert witness.

## ARGUMENT

### A.
### Standards for Admissibility of Expert Testimony.

Under Federal Rule of Evidence 702, a witness who is qualified may offer expert

opinions if:

> (a) The expert's scientific, technical, or other specialized knowledge will
> help the trier of fact to understand the evidence or to determine a <u>fact</u> in issue;
> (b) the testimony is based on sufficient facts or data; (c) the testimony is the
> product of reliable principles and methods; and (d) the expert has reliably
> applied the principles and methods to the facts of the case.

(Emphasis added). Under <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993), the

trial court is to examine whether the proposed testimony is relevant. <u>See</u> <u>Bitler v. A. O.</u>

<u>Smith Corp.</u>, 400 F.3d 1227, 1234 (10th Cir. 2005). There must be a logical relationship

---

[4] **Ex. 5** – <u>Giovanni</u>, Case No. 07-10066-MLW (D. Mass June 8, 2012) (summary judgment order and transcript with the Court's findings and conclusions). <u>See also</u>, <u>Gabana Gulf Disribution, Ltd. V. GAP Intern. Sales, Inc.</u>, 2008 WL 11123 (N.D. Cal. Jan. 9, 2008) (motion to strike Mr. Seid's report on business procedures and techniques that are customarily observed in franchising unnecessary because the court could reach decision without it).

[5] **Ex. 6** - <u>Myers</u>, Case No. 2:09-cv-01738-RBS (E.D. Penn.) (Memorandum Order approving settlement, May 10, 2019).

[6] **Ex. 7** - Plaintiff's motion to exclude Mr. Seid's testimony in <u>Juarez</u>, Case No. 4:09-cv-03495-YGR (N.D. Cal. July 11, 2019) (prior to ruling on this motion, on Nov. 21, 2019, the trial court stayed the case pending the California Supreme Court's decision on certified question from the Ninth Circuit Court of Appeals in <u>Vasquez v. Jan-Pro Franchising Int'l, Inc.</u>, 939 F.3d 1045 (9th Cir. 2019) concerning the retroactive application of state independent contractor test).

between the evidence proffered and the material issue the evidence is supposed to support such that it advances the purposes of aiding the trier of fact. Id. The trial court must also examine the reliability of an expert's proffered testimony to ensure the method employed by the expert in reaching conclusions is scientifically sound and the opinion is based on facts and actual knowledge rather than subjective belief or unsupported speculation. See Id. at 1232-33; Dodge v. Cotter Corp., 328 F.3d 1212, 1222 (10th Cir. 2003).

The district court must exclude expert testimony that does not meet threshold requirements of both relevancy and reliability. Kumho Tire Co., Ltd v. Carmichael, 526 U.S. 137, 147-48 (1999) (citing Daubert, 509 U.S. at 592). Expert testimony should also be excluded if it invades the province of the factfinder. See Baumann v. American Family Mut. Ins., Co., 836 F. Supp. 1196, 1201 (D. Colo. 2011) (citing Specht v. Jensen, 853 F.2d 805, 808-09 (10th Cir. 1988)). The proponent of the expert testimony bears the burden of proving that the testimony is admissible. United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir. 2009).

**B.**
**Mr. Seid's Testimony is Not Admissible Because it is Not Relevant to the Issue of Whether Individual Franchise Owners are Employees or Independent Contractors under the FLSA.**

The Secretary alleges that JKO's individual franchise owners who perform the janitorial cleaning services for JKO's customers are employees under the Fair Labor Standards Act ("FLSA") and, therefore, JKO must comply with the FLSA's record-keeping requirements. (Doc. No. 23 - Amended Compliant). The FLSA's economic realities test controls the determination of whether an individual is an employee or independent

contractor. See Goodly v. Check-6 et al., Case No. 16-cv-344, 2018 WL 5091901at *2

(N.D. Okla. Oct. 18, 2018) (citing Acosta v. Paragon Contractors Corp., 884 F.3d 1225,

1235 (10th Cir. 2018)).[7] This test focuses on whether the individual is economically

dependent on the business to which he performs services or, "as a matter of economic fact,

in business for himself." Doty v. Elias, 733 F.2d 720, 722-23 (10th Cir. 1984). The existence

and degree of importance of each factor of the test is for the Court to determine. See Herr

v. Heiman, 75 F.3d 1509, 1513 (10th Cir. 1996); Goodly, 2018 WL 5091901 at *3.

Mr. Seid's knowledge will not help the trier of fact understand the evidence or

determine a fact in issue. JKO retained him to explain JKO's business model and

operations, JKO's relationship with its franchise owners, and how JKO's model "compares

to the generally accepted standards and practices in franchising." (Rpt., p. 4). JKO does not

need an expert to explain its business model or its relationship with its franchise owners.

Mr. Seid's franchising knowledge will not help the trier of fact understand the evidence or

determine a fact in issue as required by Rule 702 because franchising customs and practices

are not facts relevant to the FLSA's economic realities analysis.

The Tenth Circuit Court of Appeals specifically held that the individual franchise

owners' franchise arrangements are not relevant in this case. The Court explained:

> It is well settled that the economic realities of an individual's working
> relationship with the employer—not necessarily the label or structure

---

[7] The six-factor economic realities test considers: (1) the degree of control exercised by the employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the employer's business. Acosta v. Jani-King of Oklahoma, Inc., 905 F.3d 1156, 1160 (10th Cir. 2018).

overlaying the relationship—determine whether the individual is an employee under the FLSA. [Citations omitted]. In determining whether an individual is an employee under the FLSA, <u>the inquiry is not limited to the contractual terminology between the parties or the way they choose to describe the working relationship</u>. [Citations omitted]. Other Circuits have adopted this same rule. <u>See</u>, *e.g.*, <u>Scantland v. Jeffry Knight, Inc.</u>, 721 F.3d 1308, 1311 (11th Cir. 2013) ("[The] inquiry is not governed by the 'label' put on the relationship by the parties or the contract controlling that relationship."); <u>Sec'y of Labor v. Lauritzen</u>, 835 F.2d 1529, 1544-45 (7th Cir. 1987) ("The FLSA is designed to defeat rather than implement contractual arrangements. . . . '[E]conomic reality' rather than contractual form is indeed dispositive."); <u>Robicheaux v. Radcliff Material, Inc.</u>, 697 F.2d 662, 667 (5th Cir. 1983) ("[A]n employee is not permitted to waive employee status," despite having signed independent contractor agreements).

<u>Jani-King of Oklahoma, Inc.</u>, 905 F.3d at 1159-1160. (Emphasis added). That JKO's practices may be "typical," or align with "general" or "common" franchising customs, as advanced by Mr. Seid, has no bearing on the FLSA's economic realities analysis. It is for the Court to examine all of the facts in this case, including franchise documents and witness testimony, to determine if individual franchise owners are employees or independent contractors as a matter of economic fact.

Mr. Seid asserted the same opinions and arguments he presents in this case in support of JKO's affiliate in <u>Myers</u>, <u>supra</u>.[8] In that litigation, JKO's affiliate Jani-King of Philadelphia, Inc. appealed the district court's order granting class certification on the employment relationship issue. The Third Circuit rejected the same arguments Mr. Seid advances in this case that were included in an *amicus* brief submitted by the International

---

[8] Ex. 3. Jani-King and the plaintiff class settled for $3.7 million and other terms and conditions. Ex. 6 - <u>Myers</u>, Case No. 2:09-cv-01738-RBS (E.D. Penn. May 10, 2019) (Memorandum approving settlement).

Franchise Association ("IFA"), an organization in which Mr. Seid is entrenched, including as a board member for more than 13 years.[9] Mr. Seid argues in his report and testimony that franchising should be treated differently in an employee misclassification case. (Rpt., pp. 42-43; Tr. 139:18-143:14). The IFA asserted the same arguments and stressed that "franchising is an important and beneficial way of conducting business that is fundamentally different from other situations involving misclassification claims."[10] Williams v. Jani-King of Philadelphia, Inc., et al., 837 F.3d 314, 324 (3rd Cir. 2016). The Third Circuit Court of Appeals swept aside the IFA's assertions noting that "[u]nder Pennsylvania law no special treatment is accorded to the franchise relationship. A franchisee may be an employee or an independent contractor depending on the nature of the franchise system controls." Id.

The Third Circuit previously explained in Drexel v. Union Prescription Ctrs., Inc., 582 F.2d 781, 786 (3rd Cir. 1978):

> [T]he mere existence of a franchise relationship does not necessarily trigger a master-servant relationship, nor does it automatically insulate the parties from such a relationship. Whether the control retained by the franchisor is also sufficient to establish a master-servant relationship depends in each case upon the nature and extent of such control as defined in the franchise

---

[9] "For well over twenty-five years I have served and continue to serve in a leadership position in the [IFA]." Rpt. p. 2. Mr. Seid was a member of the IFA's Board for 13 years and held many other leadership positions in the organization. Id., pp. 2-3.

[10] The Secretary recognizes that franchising is an entirely legitimate business model that employers can and do pursue, and no franchise arrangement in and of itself violates the FLSA. Here, JKO engages individual workers to perform janitorial work for it through franchise arrangements. The Secretary contends that applying the six-factor economic realities test to the facts, such workers are JKO's employees under the FLSA, whether or not they are also its franchisees.

<u>agreement or by the actual practice of the parties</u>.

(Emphasis added). Similarly, the Eleventh Circuit discounted an employer's argument in an FLSA case that the nature of its business required certain control over quality and scheduling that the court should not consider, explaining that:

> We disagree. The economic reality inquiry requires us to examine the nature and degree of the alleged employer's control, not why the alleged employer exercised such control. Business needs cannot immunize employers from the FLSA's requirements. If the nature of the business requires a company to exert control over workers to the extent that [the employer] has allegedly done, then that company must hire employees, not independent contractors.

<u>Scantland</u>, 721 F.3d at 1316. These cases and the Tenth Circuit's decision in this case highlight that franchise arrangements are not relevant under the FLSA economic realities analysis. It is for the finder of fact to consider the controls JKO has chosen to assert over its franchise owners who perform janitorial cleaning services and other facts relevant to the economic realities test. Whether Jani-King asserts certain controls similar to other franchises or business contexts is not germane to the inquiry and expert testimony has no part in the evidentiary equation.

In addition to explaining JKO's business model and reciting the IFA's Statement of Guiding Principles that Mr. Seid drafted and adopted while on the IFA board (Rpt., pp. 18-20; Tr. 107:12-108:6), Mr. Seid provides other inappropriate, irrelevant, and subjective opinions. For example, he opines that:

- Selling the customer accounts and handling customer billing are support services JKO provides that help make JKO franchise opportunities <u>accessible</u> to a range of entrepreneurs. (Rpt., p. 32).
- JKO's practice of securing customer accounts and offering them to franchise

owners is "the most <u>sensible and responsible</u> method for the franchisees, the end user, and the franchise system." (Rpt., p. 34).

- Franchisees' ability to receive cleaning opportunities from JKO rather than bid jobs is "a benefit [franchisees] <u>appreciate</u>." (Rpt., 35).
- JKO's performance of billing and accounting functions is <u>beneficial</u> to franchisees. (Rpt., p. 39).
- JKO has lower barriers to entry than most franchise systems and <u>provides opportunities</u> for people of modest means. (Rpt., p. 41).

The FLSA's economic realities analysis does not take into account opinions or facts relating to whether business practices may be beneficial, sensible, or responsible; nor does the analysis factor the accessibility of opportunities to people of modest means, or whether some franchisees may appreciate receiving customer accounts from JKO.[11]

Mr. Seid's fact recitations from depositions and documents are also not relevant and are not appropriate expert subject matter.[12] For example, Mr. Seid identifies the different roles and responsibilities of JKO and its franchisees (Rpt., pp.17-18 and 26-27) that he obtained from franchise documents and deposition testimony.[13] (Tr. 64:19-65:21, 69:4-16). He bases his opinion that franchisees prefer JKO to sell or "secure" the customer accounts for them (Rpt., p. 35) from his interpretation of the deposition testimony, including a franchise owner he recalls stating "I don't like sales."[14] (Tr. 123:18-124:13). It is for the

---

[11] As noted on pages 11 to 16 herein, Mr. Seid's opinions are not the product any technical method or analysis, but are unreliable subjective opinions.

[12] Mr. Seid considered the documents identified on page 55 of his report and only spoke to JKO's attorneys. He did not speak with any franchise owners or other individuals. (Tr. 29:18-31:5.

[13] Mr. Seid did not speak to anyone with JKO or any franchise owners in determining respective major areas of responsibility. (Tr. 65:13-16, 69:4-16). He does not know if JKO and franchisees actually perform the items he listed. (Tr. 65:17-66:24, 69:17-76:7).

[14] The Secretary disagrees that most franchisees testified that they prefer JKO securing customer accounts for them. The transcripts speak for themselves and expert testimony is

factfinder, not a paid expert, to weigh all the evidence and make a decision. Courts condemn the tactic by which an expert "simply rehash[es] otherwise admissible evidence about which he has no personal knowledge;" the law is clear that "an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." <u>Wells v. Allergan, Inc.</u>, Case No. 12-973-C, 2013 WL 7208221 at *2 (W.D. Okl. Feb. 4, 2013) (citing <u>Highland Capital Mgmt. L.P. v. Schneider</u>, 379 F. Supp. 2d 461, 468-69 (S.D.N.Y. 2005)). An expert must do more than simply "construct[] a factual narrative based upon record evidence" or "address[] 'lay matters which a jury is capable of understanding and deciding without the expert's help.'" <u>Id</u>. (quoting <u>In re Rezulin Prods. Liab. Litig.</u>, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004)).

Mr. Seid's credibility determinations also improperly usurp the role of the Court. For example, he testified that a franchise owner's testimony that she and her husband could not get a loan because JKO owns all customer contracts "was a bit odd and seemed a little cooked . . . because it's not a statement that somebody would make." (Tr. 71:20-72:3). This is improper expert opinion testimony. <u>U.S. v. Whitted</u>, 11 F.3d 782, 785-86 (8th Cir. 1993) (expert cannot pass judgment on witness's truthfulness as it is the jury's function to decide credibility).

Because Mr. Seid's opinions and testimony do not meet the threshold requirement of relevancy, he should be excluded as an expert witness.

---

unnecessary to recite deposition testimony.

## C.

**Mr. Seid's Opinions Are Unreliable Because They are Not Premised Upon Specialized Knowledge or the Application of Technical Analysis. Rather, His Opinions Are the Product of Personal Beliefs and Speculation.**

Even assuming Mr. Seid's opinions are relevant, JKO must show that the method and procedures he used in reaching his conclusions are sound and that his opinions are based on facts that satisfy Rule 702's reliability requirements. See Goebel v. Denver and Rio Grande Western R. Co., 346 F.3d 987, 991 (10th Cir. 2003). Mr. Seid's opinions, however, are not based upon any scientific or technical methods and are not the product of specialized knowledge. Rather, Mr. Seid advocates based on his subjective personal beliefs.

JKO's brand control measures. Mr. Seid argues that the control measures JKO asserts over its franchisees and customer accounts are necessary to protect JKO's brand and that such controls are typical. (Rpt., pp. 24-26). Even if this opinion was relevant, Mr. Seid did not perform any analysis to determine why JKO's specific control measures in its commercial janitorial business are necessary or what control measures may be minimally necessary to control JKO's brand. For example, he did not consider any studies or examples where failing to have certain controls in the commercial janitorial business compromised a brand. Rather, he determined that all of JKO's brand controls are necessary (*e.g.*, owning/controlling all customer accounts and pricing, performing billing and collections, customer service, inspections) by comparing JKO to other industry businesses, the way JKO " go[es] to market with that system," and as one of the "leading experts in franchising . . . I said, hey, this is how I would have designed it." (Tr. 113:23-24).

When asked if he performed an analysis to assess necessary brand control measures he responded "No. Why would I?" (Tr. 114:24-115:3), and specifically, for example, why JKO must perform onsite inspections of franchise owner's work performance, "I'm saying it because it's necessary." (Tr. 118:1-5).[15] In general, to determine what standards and controls are necessary to protect any franchise brand, Mr. Seid explained that "we make that decision and we make it as best we can." (Tr. 109:25-110:7). Any process in determining what is necessary to protect the brand depends on "whatever the sophistication of the franchise or management is." (Tr. 110:22-25).

Mr. Seid opines that JKO's practice of securing cleaning accounts (*i.e.*, owning and controlling all customer accounts) and offering them to franchisees to perform the cleaning services is "the most sensible and responsible method for the franchisees, the end user, and the franchise system." (Rpt., p. 34). In addition to being irrelevant, this opinion is not the product of specialized knowledge or analysis. Mr. Seid baldly states that it is better for the franchisor organization to sell its reputation, billing practices, customer service, and franchisees (who "are contractually obligated to meet our brand standards") directly to the customers so franchisees "[don't] have to go out and spend hour after hour banging on doors and making sales." (Tr. 122:9-123:4). An expert is not required to explain this rationale to the Court. See Andrews v. Metro North Commuter R. Co., 882 F.2d 705, 708

---

[15] On cross and redirect examinations, Mr. Seid clarified that the analysis of whether JKO's brand standards are correct is essentially based upon the fact that it is still in business and consumers buy their cleaning services. (Tr. 148:24-150:15). This explanation emphasizes that Mr. Seid does not know which brand standards are in fact necessary to protect JKO's brand.

(2nd Cir. 1989) ("For an expert's testimony to be admissible under [Rule 702] . . . it must be directed to matters within the witness' scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's help.").

Mr. Seid believes JKO must control business functions for the franchisees, otherwise "you would have chaos in the system." (Tr. 101:16-102:1). This conclusion is also not premised upon any specialized knowledge or analysis. With respect to billing functions, Mr. Seid expressed his belief that JKO franchise owners are not sophisticated enough to bill customers because most of them are immigrants. (Tr. 103:14-15).

> The franchisee at Jani-King, as they are in many of the janitorial franchises, is often an immigrant with English being a second language. Many of them, as you found in the depositions, have an 8th grade or lower education." (Tr. 102:12-16)
> . . . .
> [T]his is one of the premier franchise systems that is able to take somebody like my grandfather in the 1890s or 1910s, whenever the hell he worked. Those opportunities don't exist today for immigrants. They're not going to push a milk truck across the Brooklyn Bridge. This is the first rung franchise opportunity for people that want to move up in the United States." (Tr. 103:5-12).
> . . . .
> And while [the DOL is] taking away that opportunity from the individual immigrant – first rung opportunity . . . is just mind boggling. (Tr. 105:8-11).

When asked if JKO could screen franchisee applicants to ensure they have sufficient sophistication to perform business functions such as customer billing and collections, Mr. Seid stated:

If I were only going to pick franchisees that had [a high] level of business experience, those people might be interested in a Massage Envy. . . . Those people have more money, more sophistication. . . . You know, I'm never going to go clean a toilet. Okay. My old nanny who came out of Mexico and spoke English – Spanish down here, she cleaned them all day long at my house. She had no problem with that. That was because she was culturally ready to do that. My grandfather, my great grandfather, they had no problem picking up horse dump droppings. I don't think I could do it today. Immigrants are different. People who have not had the opportunity to go to grad school are different. (Tr. 105:23-107:1).

In advocating the virtues of JKO's low-cost franchise opportunities, Mr. Seid continued:

[A]s we go through college and you go to law school and I go to business school, we can't forget the fact that these folks don't have that opportunity. It's not that they're stupid or anything else. They just haven't had the opportunities we've had. Jani-King is giving them that opportunity. I think it is essential to understand that if we take that opportunity away from these people, they are damaged." (Tr. 130:11-19).

This testimony does not reveal any special analysis to explain why JKO must control janitorial cleaning business functions such as billing and collections; securing, pricing, selling, and owning customer accounts; inspecting work performance; etc. If anything, Mr. Seid's rationale supports the notion that JKO's franchise owners lack the business skills to operate independent businesses and, therefore, JKO must assert significant control over their activities to protect its brand and keep its customers. Mr. Seid's opinion testimony constitutes an inappropriate rant based on personal beliefs and nothing more.

JKO's janitorial cleaning activities. Mr. Seid states that it is not JKO's role to perform cleaning services for its customers because cleaning is reserved for the franchisees.

He acknowledges, however, that "in three limited circumstances," JKO is involved in managing franchisees and customer accounts. (Rpt. p. 7). He characterizes JKO's involvement in these customer cleaning services as "*de minimis*." (Rpt., pp. 7-8). In one situation, JKO's affiliate KOC Franchise Management LLC, performs all business functions for franchisee Global Gaming JK, LLC ("GG JK"), which is owned by Global Gaming Solutions, Inc., the business entity of the Chickasaw Nation. (**Ex. 8**, Art. 1 and 3).[16] In the other two situations, JKO manages franchisees who clean for schools in a specific district and for the University of Oklahoma football stadium. (Rpt., p. 8; Tr. 33:9-42:25).

Regarding KOC's management services, Mr. Seid does not know what it does for the franchisee GG JK, he did not review the Management and Operating Agreement between KOC and GG JK, he does not know the franchisee's name (GG JK), and he did not speak with the franchisee. (Tr. 34:20-35:4, 37:7-38:14). He does not know the role of the JKO employees he characterizes as "liaisons" who manage the school district or sports stadium cleanings. (Tr. 40:15-42:25). Mr. Seid characterized these JKO cleaning activities as *de minimis* "blips" (Tr. 43:18, 44:1) because he is "guessing there [a]re thousands of" JKO customers (Tr. 46:6-11)[17] and "assuming that three is quite small within the population. I don't know." (Tr. 46:15-16). Mr. Seid does not know how many customers

---

[16] GG JK executed a Franchise Agreement in March 2018 and, at the same time, delegated all day-to-day operations to KOC. This is the only franchise that is not owned by an individual or individuals (directly or indirectly through a corporate form) who perform the janitorial cleaning services.

[17] JKO's interrogatory response states that it has 405 customer accounts.

GG JK services, how many franchisees are in the JKO system,[18] the gross revenue generated by JKO's cleaning and cleaning management activities compared to other franchisees, or perform any other analysis to support his *de minimis* opinion. (Tr. 46:18-47:19, 49:2-50:6).

Mr. Seid explains that *de minimis* means "almost something you could ignore," (Tr. 47:22-23), yet franchisee GG JK, operated by JKO's affiliate KOC, is the highest revenue generator in JKO's franchise system, serving large accounts such as the University of Oklahoma sport facilities, which were previously designated to individual franchise owners. Monthly Franchisee Reports produced in discovery show GG JK grossing more than $<span>confidential</span> monthly in 2019 up to the month of May. (<u>See</u> **Ex. 9**). *confidential* ████████████████████████████████████████████████ ███████████████████████ a gross revenue threshold *individual* franchise owners do not meet. (**Ex. 10**, p. 3). Mr. Seid also was not aware, and did not factor into his *de minimis* conclusion, that JKO employs its own "In House" cleaners who perform cleaning services for customers (Tr. 50:3-51:18; **Ex. 11**), and must disclose to franchisees that it owns a franchise Outlet to perform cleaning services when necessary. (Tr. 52:6-16; **Ex. 12**).

Because Mr. Seid advocates for JKO based on his personal beliefs and assumptions rather than expressing opinions based upon specialized knowledge and analysis and facts,

---

[18] Although he does not know how many franchisees JKO has, he states "probably in the hundreds, but I don't know." (Tr. 49:23-50:2). JKO's 2019 franchisee list identifies 89 active franchisees.

his opinions are unreliable (in addition to irrelevant) and should be excluded.

## D.
### Mr. Seid Improperly Provides Legal Opinions That Invade the Province of the Court.

Mr. Seid prefaces his report with the statement that "I am not offering any legal conclusions." (Rpt., p. 3). Although Mr. Seid is not a lawyer, has no legal training (CV, p. 1; Tr. 5:25-7:8, 24:19-22), and is otherwise not qualified to give legal advice, he nevertheless goes on to expresses legal opinions and conclusions throughout his report. Mr. Seid does more than refer to laws governing franchising; rather he attempts to usurp the function of the Court by explaining the law governing franchise relationships and opining that JKO's franchise owners are independent contractors. (See, *e.g.*, Rpt., pp. 5, 17, 22, 30, 44). These conclusions and opinions improperly interfere with the role of the Court as the sole arbiter of the law and should not be allowed. See Specht, 853 F.2d at 807-810. See also, Hamstein Cumberland Music Group v. Estate of Williams, No. 06-CV-63-GKF-PJC, 2008 WL 4525782 at *1 (N.D. Okla. 2008) (precluding expert from testifying as to opinion of party's compliance with the UFTA and citing authorities that witness may not testify as to legal implications of conduct).

Mr. Seid devotes a section of his report to explain that "Franchising is Governed by Contract Law." (Rpt., p. 20). He opines that the franchise agreements "between Jani-King and its franchisees are *clearly drafted and unambiguous*." (Id.). (Emphasis added). He included this legal conclusion because in his view "it's a statement of fact." (Tr. 137:1-

2).[19] He also "wanted to put this [section in the report] . . . to explain that to the court and yourself that these are contractual documents . . . . [and] the nature of the relationship has been defined by those agreements." (Tr. 137:7-10). It is not necessary for Mr. Seid, in his role as expert, to explain to the Court that franchise agreements are contracts that define the relationship among the parties and are not ambiguous.

Mr. Seid's unqualified legal opinion on the principle issue raised in this case is wrong. He argues:

> The unsupported extra-contractual duties that the DOL is attempting to impose relate to the purported ability of Jani-King to exercise control over its Franchisees.
> . . . .
> Were it ever adopted as a practice to ignore clear, precise and explicit terms and boundaries contained in complex, well-written and negotiated bargains, and extra-contractual rights or obligations were allowed to override the express written terms, there would never be four corners of a document to examine for guidance.
> . . . .
> [I]t is my expert opinion that the DOL is attempting to impose obligations upon Jani-King that undermine the general and well recognized contractual and independent ownership relationship between a franchisor and franchisee.

(Rpt., pp. 21-22).

---

[19] Whether a contract is ambiguous is a question of law. <u>Otis Elevator Co. v. Midland Red Oak Realty, Inc</u>, 483 F.3d 1095 (10th Cir. 2007). The Secretary disagrees that JKO's Franchise Agreements are unambiguous. For example, JKO recently terminated franchisees for "abandonment" under section 8 of the Franchise Agreement. This term is not defined and is ambiguous. JKO subjectively determines what constitutes abandonment. Similarly, JKO may terminate franchisees for "engag[ing] in conduct which reflects unfavorably upon the operation or reputation of the Jani-King franchise business or System." The referenced conduct is undefined and permits JKO to subjectively determine whether conduct warrants termination for such conduct.

Mr. Seid and JKO are attempting to overrule case law through Mr. Seid's "expert" legal opinion. Per the cases cited by the Tenth Circuit included on page 6, <u>supra</u>, it is well-settled law that parties cannot contract around the FLSA. It is also well-settled law that the remedial purpose of the FLSA is specifically designed to defeat rather than implement contractual arrangements. <u>See</u> <u>Imars v. Contractors Mfg. Servs., Inc.</u>, 165 F.3d 27 (6th Cir. 1998) (citing <u>Real v. Driscoll Strawberry Assoc.</u>, 603 F.2d 748, 755 (9th Cir. 1979)). Thus, independent contractor clauses included in franchise agreements do not control the question of whether franchise owners are employees or independent contractors. Not only is this improper expert testimony, it is wrong.

Mr. Seid notes that franchise owners can accept or reject customer accounts offered to them by JKO and concludes that "[i]n my expert opinion this ability to accept or reject opportunities is a factor that supports independent contractor status." (Rpt., p. 17). Mr. Seid gleaned this fact from JKO franchise documents and deposition testimony as any lay person could do, but believes that as franchising expert "it is important for me to point out they have a choice." (Tr. 125:13-14).[20] Mr. Sied, however, is less than clear about the context or legal framework in which he is referencing independent contract status. When asked for the definition of independent contractor he responded:

> I have the classic definition that, you know, has been in place for, I don't know, most of my career until you-all changed it with David Weil . . . the definition is that the franchisor in this situation has a right to establish the

---

[20] This isolated fact does not indicate independent contractor status. <u>See</u>, <i>e.g.</i>, <u>Hughes v. Family Life Care, Inc.</u>, 117 F. Supp.3d 1365 (N.D. Fla. 2015) (although nurse could refuse offered work and was not required to perform minimum hours or days, she was an FLSA employee where registry subjected her to a non-compete, oversight via customer surveys, supervisory visits, incident reports, and a discipline system).

standards, but the franchisee is in control of when the work is done, who does the work, and those parts of it.

(Tr. 55:9-19).

Mr. Seid could not cite to the "classic" definition, but suggested "if you want to find the classic definition of independent contractor in your office, I would probably turn to David Weil's book." (Tr. 56:3-10). Mr. Seid can only explain the basis of his "expert" opinion through vague concepts and comments about Dr. Weil, the former Administrator of the Wage and Hour Division. When asked if he knew what statute this litigation was brought under he stated, "I know that you're looking under the Fair Labor Practices. . . . Look at the definition of whether the control statutes are in place to be an employee. I don't know which the statute is." (Tr. 143:15-23). Mr. Seid's comments and opinions concerning franchise owners' status as independent contractors are incoherent and nonsensical.

Mr. Seid also improperly provides his "expert" opinion about the meaning of JKO's Franchise Agreement throughout his report. For example, in addition to other interpretations, he states that under the Franchise Agreement Jani-King does not have the right to exercise management controls over the franchisees' businesses and they are free from supervision (Rpt., p. 26). It is for the Court, and not Mr. Seid, to determine the meaning of the Franchise Agreement and other franchise documents and how they relate to the FLSA's economic realities test.

Because Mr. Seid is not qualified to provide legal opinions, his legal opinions are wrong, and such legal opinions are not appropriate expert subject matter, he should be excluded as an expert.

## CONCLUSION

Mr. Seid's report and testimony establish that his expert opinions are inadmissible. The Secretary respectfully requests that the Court enter an Order that Mr. Seid's report and testimony should not be admitted at trial.

Respectfully submitted,

Kate S. O'Scannlain, Solicitor of Labor
John Rainwater, Regional Solicitor
Timothy S. Williams, Acting Associate Regional Solicitor
Lydia Tzagoloff, Counsel for Wage Hour Division

/s/Tyler P. McLeod
Tyler P. McLeod, Senior Trial Attorney
Karen E. Bobela, Senior Trial Attorney
United States Department of Labor
1244 Speer Boulevard, Suite 515
Denver, CO 80204
(303) 844-0936
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

Service of the foregoing Plaintiff's Motion to Exclude Expert and Brief in Support

has been made this 24th day of February, 2020, by e-filing to the following:

Carrie Hoffman
Peter Loh
Brantley Smith
Foley Gardere LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201

/s/Tyler P. McLeod