Monique Olivier (SBN 190385)
(monique@osclegal.com)
Christian Schreiber (SBN 245597)
(christian@osclegal.com)
Miguel Zavala (SBN 325436)
(miguel@osclegal.com)
OLIVIER SCHREIBER & CHAO LLP
201 Filbert Street, Suite 201
San Francisco, California 94133
(415) 484-0980

Shannon Liss-Riordan (SBN 310719)
(sliss@llrlaw.com)
Adelaide Pagano, *pro hac vice*
(apagano@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Fax: (617) 994-5801

James C. Sturdevant (SBN 94551)
(jsturdevant@sturdevantlaw.com)
THE STURDEVANT LAW FIRM
4040 Civic Center Drive, Suite 200
San Rafael, CA 94903
(415) 477-2410
Fax: (415) 492-2810

Attorneys for Plaintiffs and the Putative Class

Exhibit 7

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ALEJANDRO JUAREZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JANI-KING OF CALIFORNIA, INC., a Texas Corporation, et al., <br><br> Defendants. | Case No.:  09-cv-03495 YGR <br><br> **PLAINTIFFS' NOTICE OF MOTION TO EXCLUDE THE TESTIMONY OF MICHAEL H. SEID; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Date:          October 22, 2019 <br> Time:          2:00 pm <br> Location:   Courtroom 1, Fourth Floor <br><br> Hon. Yvonne Gonzalez Rogers |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on October 22, 2019 at 2:00 p.m., before the Honorable Yvonne Gonzalez Rogers, 1301 Clay Street, Oakland, California, Courtroom 1, Fourth Floor of the above-referenced Court, Plaintiffs Alejandro Juarez and Maria Juarez ("Plaintiffs") will and hereby do move to strike the Declarations of Michael H. Seid on grounds that Mr. Seid's testimony is irrelevant and unreliable pursuant to Federal Rule of Evidence 702.

This motion is based upon this Notice and the accompanying Memorandum of Points and Authorities, all papers and pleadings on file or deemed to be on file herein, and such argument as may be presented at the hearing.

Date: July 11, 2019                    Respectfully submitted,

OLIVIER SCHREIBER & CHAO LLP

LICHTEN & LISS-RIORDAN, P.C.

THE STURDEVANT LAW FIRM, APC

*/s/ Christian Schreiber*
Christian Schreiber
Attorneys for Plaintiffs

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION.................................................................................................. 1

II.  BACKGROUND REGARDING THE TESTIMONY ON JANI-KING'S EXPERT................. 2

III.  STANDARD OF REVIEW.................................................................................... 2

IV.  ARGUMENT.................................................................................................... 4

    A.  The Court Should Exclude the Seid Declaration Because Franchise Law Is Irrelevant in Light of *Dynamex*.................................................................................... 4

    B.  Even If Franchising Testimony Were Relevant, Seid's Testimony Should Be Excluded Because It Fails to Determine Any Fact in Issue And Is Unreliable............................. 5

    C.  The Court Should Exclude The Testimony of Michael Seid Because It Constitutes Improper Legal Conclusions...................................................................... 8

V.  CONCLUSION.................................................................................................. 9

## I.   INTRODUCTION

Plaintiffs Alejandro Juarez and Maria Juarez ("Plaintiffs") move to exclude the testimony of Michael H. Seid, whose testimony on franchising has been offered by Defendant Jani-King of California, Inc. ("Jani-King"). Plaintiffs' claims in this case, however, are wage and hour claims that do not require any consideration of franchise law. As such, Mr. Seid's testimony is irrelevant and should be excluded.

Plaintiffs claim that they and other janitors were Jani-King employees, but Jani-King misclassified them as "franchisees." The California Supreme Court's April 2018 decision in *Dynamex Operations West v. Superior Court*, 4 Cal. 5th 903 (2018) established a three-part test for determining whether a worker is an independent contractor or an employee. This test – the so-called "ABC Test" – created a clear standard by which to adjudicate the claims of workers who have been misclassified. *Id.* at 964.

In May, the Ninth Circuit decided *Vazquez v. Jan-Pro Franchising International, Inc.*, 923 F.3d 575 (9th Cir. 2019), a wage and hour case involving many of the same claims as those at issue here. The *Vazquez* court rejected application of California franchise law and instead applied the ABC test from *Dynamex*. *Id.* at 592. *Vazquez*, therefore, should end the inquiry about the relevance of any of Mr. Seid's testimony.

Mr. Seid's testimony is irrelevant and improper on additional grounds. First, even if Mr. Seid's "franchising" expertise were relevant, his testimony is not. His opinions concern "general franchising practices" that do not aid the fact finder in determining any relevant fact in this case. Fed R. Evid. 702. Whether Jani-King's conduct is "common in franchising" (Seid Decl. ¶ 8) or "typical" (*Id.* ¶ 32) is irrelevant to whether Jani-King has violated California wage and hour law. Similarly, his cheerleading of the Jani-King franchise "model" as a paragon of "opportunity" (*id.* ¶¶ 81-86) is flawed and inadmissible for the same reason.

Second, his testimony is rife with legal conclusions. Mr. Seid offers numerous improper opinions about the meaning of California law (*Id.* ¶ 49) and elements of the ABC test, including the level of control Jani-King exercises over purported franchisees (*Id.* ¶ 52). These are not questions for an expert, but for the Court.

1

In sum, Mr. Seid's testimony is irrelevant and improper and should be excluded.

## II.     BACKGROUND REGARDING THE TESTIMONY OF JANI-KING'S EXPERT

Mr. Seid submitted a Declaration on August 13, 2010. Dkt. 109-8, Ex. 5. According to this declaration:

> Jani-King of California, Inc. ("Jani-King"), has asked me to review Plaintiffs' Motion for Class Certification and the Declaration of Steven Cumbow in Support of Plaintiff's Motion. Jani-King has asked me to focus in particular on Plaintiffs' claim at page one of their 15 class certification motion that under Jani-King's system franchisees are "effectively paying JK for low-wage jobs, not real 'business opportunities.'"

Dkt. 109-8, Ex. 5 (August 13, 2010 Seid Decl. ¶ 13).

Plaintiffs deposed Mr. Seid on September 1, 2010. *See* Declaration of Christian Schreiber ("Schreiber Decl."), Ex. 1. Mr. Seid also provided a declaration on November 8, 2018 in support of Jani-King's Opposition to Plaintiffs' Motion to Vacate the Court's summary judgment order. Dkt. 234-1.

In February, Mr. Seid submitted a Supplemental Declaration. This Declaration states in part:

> I reaffirm and incorporate by reference my prior declarations and testimony in this matter. This supplemental declaration will only repeat the portions of my prior declarations that are helpful in providing context to the supplemental opinions I am providing here.

Seid Decl. ¶ 4.

Mr. Seid's Supplemental Declaration (referred to herein as "Seid Decl.") is dated February 22, 2019 and incorporates his prior testimony. Schreiber Decl., Ex. 2. Plaintiffs seek to exclude the testimony of Mr. Seid for the reasons stated herein, though Plaintiffs understand that Jani-King is relying upon only Mr. Seid's February 2019 testimony. Any references to different testimony are noted.

## III.    STANDARD OF REVIEW

Under Rule 702 of the Federal Rules of Evidence, a court may rely upon expert testimony only if it is both relevant and reliable. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 595 (1993). Expert testimony is *relevant* if it will "help the trier of fact to understand the evidence or to determine a <u>fact</u> in issue." Fed. R. Evid. 702(a) (emphasis added). Expert testimony is *reliable* if it is based on "sufficient facts or data" and is the "product of reliable principles and methods" that have been

"reliably applied ... to the facts of the case." *Id.* 702(b)-(d). "[G]enerally, the Court looks to: (1) whether the expert opinion is based on scientific, technical, or other specialized knowledge; (2) whether the opinion would assist the trier of fact; (3) whether the expert has appropriate qualifications; (4) whether the expert's methodology fits the conclusions; and (5) whether the probative value of the testimony outweighs prejudice, confusion, or undue consumption of time." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 823 F. Supp. 2d 995, 1002 (N.D. Cal. 2011).

"If evidence lacks either reliability or relevance, it must be excluded." *Cooper v. Brown*, 510 F.3d 870, 943 (9th Cir. 2007). "In general, '[t]estimony that simply tells the jury how to decide is not considered 'helpful' as lay opinion.'" *Fireman's Fund Ins. Cos.*, 106 F.3d at 1468 n. 3 (citing Fed.R.Evid. 701); *see also Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828, 830 (8th Cir.1988) ("Under either [Rule 701 or Rule 702], evidence that merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible."). *Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1059–60 (9th Cir. 2008).

In this respect, a district court may exclude as expert opinion testimony that offers little value to the "task at hand." *United States v. Cervantes*, 2015 WL 5569276, at *1 (N.D. Cal. 2015). "Otherwise admissible expert testimony may be excluded under Fed. R. Evid. 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or undue delay." *United States v. Hoac,* 990 F.2d 1099, 1103 (9th Cir.1993). Expert testimony may be excluded where it "would inject collateral matters with weak probative value." *CFM Communications, LLC v. Mitts Telecasting Co.*, 424 F.Supp.2d 1229, 1236 (E.D. Cal. 2005). "Whether testimony is helpful within the meaning of Rule 702 is in essence a relevancy inquiry…Expert testimony which does not relate to any issue in the case is not relevant, and ergo, non-helpful." *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007).

Jani-King "has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702 advisory committee's note; *Perez v. Seafood Peddler of San Rafael, Inc.*, 2014 WL 2810144, at *1 (N.D. Cal. 2014), citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). If such testimony is inadmissible it cannot be relied upon for summary judgment. "A trial court can only consider admissible evidence in ruling on a motion for

1  summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); Fed. R. Civ.

2  P. 56(e).

3  **IV.   ARGUMENT**

4      **A.  The Court Should Exclude the Seid Declaration Because Franchise Law Is Irrelevant in

5         Light of *Dynamex*.**

6        Seid is being offered as an expert on franchising (Seid Decl. ¶¶ 1-4), but the subject matter is

7  irrelevant to the inquiry before the Court. As the Ninth Circuit held in *Vazquez*, a franchise analysis "has

8  no application to the ABC test applicable to wage and hour cases." *Vazquez*, 923 F.3d at 594.

9        *Vazquez* is directly on point. In *Vazquez*, the Ninth Circuit considered the application of the ABC

10  test from *Dynamex* to a janitorial company relying on a franchise defense to the misclassification claims.

11  At the district court, the defendant contended (as Jani-King has contended here) that *Patterson v.*

12  *Domino's Pizza, LLC*, 60 Cal.4th 474 (2014), supplied the relevant standard. *Patterson* involved a claim

13  of vicarious liability for sexual harassment by a franchisee. In light of *Dynamex*, the Ninth Circuit

14  rejected the district court's analysis and overturned its conclusion that *Patterson* "supplied the relevant

15  standard." *Vazquez*, 923 F.3d at 592. "As summarized earlier, the district court employed a gloss

16  from *Patterson* in holding that Plaintiffs were not employees under *Martinez*'s first definition of

17  employment. However, *Patterson*, unlike *Dynamex*, was not a wage and hour case; therefore, it has no

18  application to the ABC test applicable to wage and hour cases." *Id.* at 594.

19        The same analysis applies here. The Seid Declaration – submitted three months before the Ninth

20  Circuit's decision in *Vazquez* – deals exclusively with franchising. His expertise is in franchising (Seid

21  Decl. ¶¶ 2-3) and his opinions are about franchising. *Id.* ¶ 8. But franchising is irrelevant to the Court's

22  consideration of Jani-King's misclassification of class members under the relevant Ninth Circuit

23  standard. *Vazquez*, 923 F.3d at 594. Mr. Seid's franchising testimony does not relate to any of the factors

24  this Court considers under the California employee-classification test. Therefore, none of Mr. Seid's

25  testimony relates to a relevant issue in the case and is "ergo, non-helpful." *Stilwell v. Smith & Nephew,*

26  *Inc.*, 482 F.3d at 1192. Under Rule 702, the Seid Declaration should be excluded.

27

28

**B. Even If Franchising Testimony Were Relevant, Seid's Testimony Should Be Excluded Because It Fails to Determine Any Fact in Issue And Is Unreliable.**

Fed. R. Evid. 702 provides that an expert witness may testify if the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). As the Ninth Circuit has explained, "relevance means that the evidence will assist the trier of fact to understand or determine a fact in issue. The evidence must logically advance a material aspect of the party's case." *Cooper v. Brown*, 510 F. 3d. at 942.

The Seid Declaration fails this test because it does not assist the Court in determining any material facts. The bulk of Mr. Seid's testimony relates to the "concept" of franchising, the nature of the franchisor-franchisee relationship, and the difference between the relative "roles" of each. Mr. Seid testifies that these roles are "symbiotic" because "it is the role of the franchisor to manage the system, and it is the role of the franchisee to deliver to the end-user the services marketed by the brand." Seid Decl. ¶ 11. Mr. Seid attempts to illustrate the "common" or "typical" functions of a franchisor and franchisee in order to demonstrate that "the functions performed by Jani-King fall within the mainstream of franchising in the United States." *Id.* ¶ 13. But none of this testimony contained in paragraphs 9-28 of Mr. Seid's Declaration is relevant to the determination of Jani-King's compliance with the California Labor Code, or *Dynamex*. Nor does Mr. Seid's testimony describing "Jani-King in particular" (*id.* ¶¶ 29-41) illuminate any material facts to be determined by the Court.

The logical fallacy of Mr. Seid's testimony is self-evident. Either Mr. Seid is advancing testimony for the proposition that Jani-King did not intend to violate the law, or Mr. Seid is advancing the proposition that Jani-King was not alone in violating the law. Both are irredeemably flawed bases for expert testimony. First, with the exception of Labor Code § 226 (which is not the subject of Mr. Seid's testimony), Plaintiffs' First Amended Complaint does not include claims for which intent is an element. Thus, any conclusions relating to Jani-King's intent are irrelevant.

Second, whether Jani-King's franchising model is typical of the industry, typical of the fast food industry, or an outlier altogether, is also irrelevant. If common industry practice is unlawful, the relevant consideration is not what is common but whether what is common violates the law. It is a truism to state that courts are charged with resolving case-specific questions that may have broader, industry-wide

implications. As the California Supreme Court explained in *Dynamex*, "The issue in this case relates to the resolution of the employee or independent contractor question in one specific context." 4 Cal.5th at 913. Nevertheless, the court noted that misclassification claims were widespread. *Id.* ("[T]he relevant regulatory agencies of both the federal and state governments have declared that the misclassification of workers as independent contractors rather than employees is a very serious problem, depriving federal and state governments of billions of dollars in tax revenue and millions of workers of the labor law protections to which they are entitled."). Mr. Seid's testimony "contextualizing" Jani-King's business model is therefore of no relevance to the Court's determination of any fact at issue in the case.

In the same vein, the goals of a franchisor are also irrelevant. According to Mr. Seid, "the franchise brand is equivalent to its reputation with the public." Seid Decl. ¶ 42. Mr. Seid concludes that legal requirements and brand protectionism motivates franchises, including Jani-King, to "set brand standards." *Id.* ¶ 50. Again, Mr. Seid's observations do not assist the Court in understanding any fact at issue. Jani-King's protectionist motives may be understandable, laudable, nefarious, or benign, but they are ultimately beside the point. What matters is not Jani-King's motive, but its conduct – and this is beyond the appropriate scope of an expert's testimony.

Mr. Seid's opinions about Jani-King "providing opportunities for people of modest means" are also irrelevant and unreliable. Seid Decl. ¶¶ 81-86; ¶ 56. The purported affordability of a Jani-King franchise fee is irrelevant to the claims in this case. Nor is the relative franchise fee charged by Jani-King – in comparison to fast food chains, hotels, junk haulers, or barbershops – relevant. *Id.* ¶ 81. The cost charged by Jani-King does not elucidate any relevant fact for the Court and should be excluded under Fed. R. Evid. 403 because it can only confuse the issues by "inject[ing] collateral matters with weak probative value." *CFM Communications, LLC*, 424 F.Supp.2d at 1236. Mr. Seid's conclusions in paragraphs 81-86 are also unreliable. According to Mr. Seid, "The experiences of Jani-King franchise owners confirm that Jani-King provides an opportunity that is accessible to people of modest means and that enables them to be successful and grow their business." Seid Decl. ¶ 84. But this opinion is contradicted by the testimony of Plaintiffs and multiple putative class members and is not based on any reliable scientific study of Jani-King franchise owners, scientific methodology, sampling, or even a scientific study of the broader industry. In short, Mr. Seid offers <u>no</u> basis for his conclusions beyond two

6

examples and "the information I have reviewed about Jani-King." *Id.* ¶ 86.

This same flaw also taints Mr. Seid's testimony about the "usefulness" and "substantial benefit" of Jani-King's business practices. *See, e.g.*, Seid Decl. ¶¶ 56, 76. Mr. Seid testifies that by "securing accounts," "handling billing," and "contracting with the end-user" – among other "ministerial functions" (*id.* ¶ 79) – Jani-King offers its franchisees a "material benefit." *Id.* ¶ 76. This testimony suffers from the same relevance problems as those noted above because the claims in this case do not turn on the real or perceived benefit of Jani-King's actions. But Mr. Seid's opinions about the "material benefit" to franchisees of Jani-King's business practices is not based on any reliable methodology for determining "benefit." Mr. Seid's opinions are based on his understanding that "these cleaning clients want to have a single point of billing" (*id.* ¶ 76) and that "most small janitorial franchisees could not function" if billing was left to them. *Id.*

These conclusions are baseless.[1] Mr. Seid does not explain whether or how many of Jani-King's client have multiple locations, what they report they want to have, whether of any purported franchisee actually has the "capacity" to bill clients, or even what that capacity entails. Mr. Seid's opinions are not expert opinions at all; they are rank speculation unsupported by even a survey monkey.

Additionally, Mr. Seid's conclusions about what constitutes a "benefit" is directly at odds with the informational guide provided by the State of California's Department of Business Oversight and cited in his testimony. *See* Seid Decl., ¶ 74, Ex. 2 ("Buying a Janitorial Franchise"). The Guide includes five pages under the heading of "PROBLEMS YOU MAY FACE," among a litany of other considerations, warnings, and admonitions about making such a purchase. In this section, the Guide identifies one such problem:

> *Franchisor-owned accounts.* The franchisor may own ***all*** the customer accounts, including those that you get on your own. This means that if your franchise agreement ends, you will not be able to service the accounts for which you paid a fee, and you won't be able to service the accounts you get on your own, either.

*Id.*, Guide at p. 5.

But while Mr. Seid claims that "direct contracting" is *common* in janitorial franchises (*id.* ¶ 72)

---

[1] Mr. Seid testified in deposition that he did not ask a single Jani-King franchisee whether they considered the billing and accounting a benefit. Seid Dep. 115:2-19.

and that it is beneficial *for the franchisor* because it creates "an effective method of protecting its goodwill" (*id.* ¶ 75), he fails to note what benefit inures to the purported franchisee. This is because Mr. Seid has no basis to draw any such conclusions about such benefits. Mr. Seid's failure to support his conclusions with any reliable methodology is fatal to its inclusion in this case.[2] Under Rule 702, these conclusions should be excluded as unreliable.

### C. The Court Should Exclude the Testimony of Michael Seid Because It Constitutes Improper Legal Conclusions.

Mr. Seid's Declaration also contains numerous examples of improper legal conclusions that should be excluded. Fed. R. Evid. 702.

This Court has previously recognized that "opinions regarding California franchise laws and their application" are not a proper subject for expert testimony. *See Traumann v. Southland Corp.*, 858 F. Supp. 979, 985 (N.D. Cal. 1994) (excluding expert's conclusions "because they do not help determine the facts in issue" and because expert testimony "must embrace factual issues and may not include legal opinions or conclusions.") The exclusion of legal conclusions is not permitted when it consists of legal conclusions or opinions. *Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 508–10 (2d Cir.), *cert. denied*, 434 U.S. 861 (1977); *Stathakos v. Columbia Sportswear Company*, 2018 WL 1710075, at *5 (N.D. Cal. 2018) ("Opinions on legal issues are properly the subject of attorney argument, not expert testimony.").

Mr. Seid's Declaration contains legal conclusions that are not the province of proper expert testimony. For example, Mr. Seid testifies about elements of Jani-King's "control" of franchisees – which is a legal conclusion for the Court to decide.[3] "Control" has a legal meaning that infects Mr.

---

[2] Mr. Seid's 2010 Declaration stated, "I have learned that many Jani-King franchisees throughout the United States, including in California, consider themselves successful business owners." Dkt. 109-8, Ex. 5 (2010 Seid Decl. ¶ 33). Mr. Seid testified at deposition that this conclusion was based on his review of only four declarations supplied by Jani-King. Schreiber Decl., Ex. 1 (Seid Dep. 61:13-62:3). Mr. Seid's February 2019 Declaration states that he "considered" 15 declarations. Schreiber Decl., Ex. 2 (Seid Decl., App'x B).

[3] Mr. Seid testified at his 2010 deposition that Jani-King does not control the day-to-day operations of the franchisees. "Absolutely. It's common sense they don't." Schreiber Decl., Ex. 1 (Seid Dep. 97:6-10). But if true, Mr. Seid's testimony would offer another basis for exclusion, namely that an expert opinion is unnecessary for a "common sense" inquiry. Fed. R. Evid. 702; *Lassalle v. McNeilus Truck & Manufacturing, Inc.*, 2017 WL 3115141, at *5 (N.D. Cal. 2017) ("the jury has no need for expert (continued on next page)

Seid's testimony and compels its exclusion. *Pokorny v. Quixtar Inc.*, 2007 WL 1932922, at *3 (N.D. Cal. 2007) (excluding testimony because "the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular."). For example:

- "Franchisees control their business activities and are responsible…for managing their businesses" (Seid Decl. ¶ 37);
- "Franchisees do not, however, perform…Jani-King's core business activities" (*id.* ¶ 40);
- "the role of Jani-King franchisees includes…business activities that are distinct from Jani-King's business activities" (*id.* ¶ 41);
- "so long as the franchisor exercises control over its brand standards and the essential elements of the franchise system, a franchise relationship exists" (*id.* ¶ 49);
- "Jani-King Imposes Typical Franchise Controls, Not Supervisory Controls…" (*id.* ¶ 51 [heading] );
- "Jani-King does not in fact, exercise management controls" (*id.* ¶ 52);
- "the franchisees manage their businesses day-to-day…[and] have the sole and exclusive right and responsibility to make critical decisions and manage their businesses…" (*id.* ¶¶ 53-54);
- "The support services provided by Jani-King do not merge the respective roles and responsibilities of the franchisor and franchisee" (*id.* ¶ 57);
- Franchisees are "free to negotiate" the terms of contracts between Jani-King and its customers; (*id.* ¶ 63);

These statements are all legal issues that are not proper for an expert's opinion. Plaintiffs' wage claims turn on the nature of Jani-King's business and the question of whether Jani-King retained the right to control its purported franchisees. *Dynamex*, 4 Cal. 5th at 964. There is no need for expert testimony on the topic of whether or not Jani-King retained the right of control over its purported franchisees, how much control it exercised, and whether that control is typical. The evidence on these

(Footnote continued from previous page)
testimony on issues of "common sense…").

topics will include testimony from class members, Jani-King franchise agreements and Jani-King's common policies, practices and procedures. They are facts for the Court to weigh, not an expert's testimony. *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (Matters of law are "inappropriate subjects for expert testimony."); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058–59 (9th Cir. 2008) (resolving questions of law "is the distinct and exclusive province of the trial judge."); *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge…").

Nor should the Court endeavor to rescue Mr. Seid's testimony by excluding only portions of this declaration. *Pokorny*, 2007 WL 1932922, at *3 (N.D. Cal. 2007). ("However, legal conclusions are pervasive in the Hayford Declaration, and the Court will not endeavor to rewrite the entire declaration, striking or allowing testimony on a sentence-by-sentence basis."). Mr. Seid's testimony offering legal conclusions should therefore be stricken under Fed. R. Evid. 702.

## V.    CONCLUSION

The testimony of Michael Seid contains irrelevant and unreliable opinions and improperly offers legal conclusions. It should be excluded.


Date: July 11, 2019                       Respectfully submitted,

                                          OLIVIER SCHREIBER & CHAO LLP

                                          LICHTEN & LISS-RIORDAN, P.C.

                                          THE STURDEVANT LAW FIRM, APC

                                          */s/ Christian Schreiber*
                                          Christian Schreiber
                                          Attorneys for Plaintiffs

Monique Olivier (SBN 190385)
(monique@osclegal.com)
Christian Schreiber (SBN 245597)
(christian@osclegal.com)
Miguel Zavala (SBN 325436)
(miguel@osclegal.com)
OLIVIER SCHREIBER & CHAO LLP
201 Filbert Street, Suite 201
San Francisco, California 94133
(415) 484-0980

Shannon Liss-Riordan (SBN 310719)
(sliss@llrlaw.com)
Adelaide Pagano, *pro hac vice*
(apagano@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Fax: (617) 994-5801

James C. Sturdevant (SBN 94551)
(jsturdevant@sturdevantlaw.com)
THE STURDEVANT LAW FIRM
4040 Civic Center Drive, Suite 200
San Rafael, CA 94903
(415) 477-2410
Fax: (415) 492-2810

Attorneys for Plaintiffs and the Putative Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ALEJANDRO JUAREZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JANI-KING OF CALIFORNIA, INC., a Texas Corporation, et al., <br><br> Defendants. | Case No.:  09-cv-03495 YGR <br><br> **DECLARATION OF CHRISTIAN SCHREIBER IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF MICHAEL H. SEID** <br><br> Date:                October 22, 2019 <br> Time:                2:00 pm <br> Location:        Courtroom 1, Fourth Floor <br><br> Hon. Yvonne Gonzalez Rogers |

I, Christian Schreiber, declare as follows:

1.     I am a member in good standing of the State Bar of California and a founding partner of Olivier Schreiber & Chao LLP. I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, I could and would testify thereto. I submit this declaration in support of Plaintiffs' Motion to Exclude the Testimony of Michael H. Seid.

2.     Attached as Exhibit 1 are true and correct copies of the excerpts from the September 1, 2010 deposition of Michael Seid.

3.     Attached as Exhibit 2 is a true and correct copy of the February 22, 2019 Supplemental Declaration of Michael Seid.

4.     Mr. Seid's previous testimony in this matter has been filed. His 2010 declaration is docketed at 109-8, Ex. 5, and his 2018 declaration is docketed at 234-1.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 11th day of July 2019 in San Francisco, California.

/s/ *Christian Schreiber* _____

Christian Schreiber

# EXHIBIT 1

```
        IN THE UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF CALIFORNIA
              SAN FRANCISCO DIVISION
                      ----

ALEJANDRO JUAREZ, MARIA       : Case No.
JUAREZ, LUIS A. ROMERO and    : CV09-03495 SC
MARIA PORTILLO, individually  :
and on behalf of all others   :
similarly situated,           :
Plaintiffs,                   :
              v.              :
JANI-KING OF CALIFORNIA, INC.,:
a Texas Corporation, et al.,  :
Defendants                    :
```

                      ----
           Wednesday, September 1, 2010
                      ----

Pretrial examination of MICHAEL SEID, held in

the offices of HQ Global, 1500 Market Street,

12th Floor, East Tower, Philadelphia, PA

19102, commencing at 9:32 a.m., on the above

date, before Mickey Dinter, Notary Public for

the Commonwealth of Pennsylvania, Certified

Court reporter and Registered Professional

Reporter.
                      ----
           Bridget Mattos and Associates
                    Box 663
                  Ross, CA 94957
                  (415) 710-2501

                      ----

**DEPOSITION OF MICHAEL SEID**
September 1, 2010

Page 2

```
 1    A P P E A R A N C E S:

 2

      THE STURDEVANT LAW FIRM
 3    BY: WHITNEY HUSTON, ESQUIRE
      354 Pine Street, Fourth Floor
 4    San Francisco, CA 94104
      415477.2410
 5    whuston@sturdevantlaw.com
      Counsel for Plaintiffs
 6

 7    FAEGRE & BENSON LLP
      BY:  WILLIAM L. KILLION, ESQUIRE
 8    2200 Wells Fargo Center
      90 South Seventh Street
 9    Minneapolis, MN 55402-3901
      612.766.7000
10    wkillion@faegre.com
      Counsel for Defendants
11
      Also Present:  Stephen C. Hagedorn, Esquire
12    General Counsel, Jani-King International

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**DEPOSITION OF MICHAEL SEID**
September 1, 2010

```
 1      Q.  He is not a California franchise
 2   owner?
 3      A.  I don't recall if he is in California
 4   or in -- I know he's a franchisee of Jani-King.
 5   I thought he was out in California.  Could be
 6   out in Georgia, also.  I've read a lot of
 7   articles about Jani-King over the years.  I
 8   read the Craig Taylor article.
 9      Q.  Do you want to take a look and see if
10   he was a franchisee in California.
11      A.  He's out of Atlanta.  I was right on
12   the first one.
13      Q.  You stated in your declaration, that
14   Jani-King franchise owners in California
15   considered themselves successful business
16   owners, correct?
17      A.  Correct.
18      Q.  Who did you talk to in order to reach
19   that conclusion?
20      A.  I reviewed four declarations.
21   Saunders.
22      Q.  I won't test your memory on that one.
23             Was it the four declarations
24   submitted by defendants?
25      A.  They were.  I have also had discussions
```

**DEPOSITION OF MICHAEL SEID**
September 1, 2010

1    with management of Jani-King and asked

2    questions about the system.   In there were

3    those four people.

4         Q.   Your statement that Jani-King

5    franchises in California consider themselves

6    successful business owners is based on those

7    four business owners, the four franchisees?

8         A.   For this purpose, sure.

9         Q.   What was their definition of success?

10        A.   I think it was unique to each of them.

11        Q.   Can you tell me one of them?

12        A.   Yes.   They were happy; they have

13   continued in business; they like the freedom

14   of being franchisees.   In one case, they, one

15   did not enjoy being an employee and he

16   enjoyed being a franchisee.   They like making

17   money; they like the opportunity of going

18   from -- one was a manager and now he owned

19   his own business.   They liked managing people

20   in those declarations.   There was a whole

21   different slew of fairly typical reasons that

22   people like being franchisees.

23        Q.   How do you define successful

24   franchisee?

25        A.   For me personally or for the world?

**DEPOSITION OF MICHAEL SEID**
September 1, 2010

1      Q.  Do you know?

2      A.  It's not in the CFIL day-to-day

3  definition.

4      Q.  Outside of the CFIL, do you know?

5      A.  Not that comes to mind.

6      Q.  You have made a conclusion that Jani-

7  King does not control the day-to-day

8  operations, correct, of the franchisees?

9      A.  Absolutely.  It's common sense they

10  don't.

11      Q.  And you're understanding of what the

12  day-to-day operations are is based on the CFIL?

13      A.  No.  Based upon all of what I have

14  read in this case, in the Massachusetts case,

15  and the declarations of your clients, in the

16  declarations of the four franchisees that

17  support it.  If you have the declarations of

18  just, let's stay with your franchisees, pull

19  those declarations out, and you can see that

20  they had control.

21      Q.  Right.  I think you are not really

22  answering my question.  I would ask that you

23  listen to my question.

24      A.  I'm doing my best.

25      Q.  I know.  My question has to do with

**DEPOSITION OF MICHAEL SEID**
September 1, 2010

1    it up.

2        Q.  Do you believe that franchisees prefer

3    not to control the billing and accounting

4    functions of their franchise?

5        A.  A hundred percent of franchisees?  Or

6    do we have wiggle room?

7        Q.  You get some room.

8        A.  I'm sure some franchisees absolutely

9    love it, I'm sure some absolutely hate it,

10   and there's probably some in the middle.

11       Q.  Do you consider it a benefit to the

12   franchisee?

13       A.  An extraordinary benefit.

14       Q.  Do you consider it a benefit to the

15   Jani-King franchisees?

16       A.  An extraordinary benefit.

17       Q.  Have you asked any Jani-King fran-

18   chisees whether or not they agree with you?

19       A.  No.

20       Q.  So, that's your opinion?

21       A.  That's all you asked for.

22       Q.  Right.

23       A.  You asked me if I considered it.  The

24   answer was, yes, it's a great benefit.

25       Q.  Part of my job is to understand the

**DEPOSITION OF MICHAEL SEID**
September 1, 2010

1                    CERTIFICATION

2

3                    I hereby certify that the

4    testimony and the proceedings in the

5    aforegoing matter are contained fully and

6    accurately in the stenographic notes taken by

7    me, and that the copy is a true and correct

8    transcript of the same.

9

10   MICKEY DINTER
     Registered Professional Reporter
11   Certified Court Reporter
     Notary Public
12

13

14   The foregoing certification does not apply to

15   any reproduction of the same by any means

16   unless under the direct control and/or

17   supervision of the certifying shorthand

18   reporter.

19

20

21

22

23

24

25